# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| KIMBERLY MORGAN, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>  vs.<br><br>VIRTUOSO SOURCING GROUP, LLC, and PENDRICK CAPITAL PARTNERS, LLC,<br><br>        Defendants. | Case No.: 16-cv-1461<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Kimberly Morgan is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5. Defendant Virtuoso Sourcing Group, LLC ("Virtuoso") is a foreign limited liability company with its principal place of business located at 4500 Cherry Creek Drive South, Suite 300, Glendale, CO 80246.

6. Virtuoso is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Virtuoso is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Virtuoso is a debt collector as defined in 15 U.S.C. § 1692a.

8. Defendant Pendrick Capital Partners, LLC ("Pendrick") is a foreign limited liability company with its principal place of business located at 1714 Hollinwood Drive, Alexandria, VA 22307.

9. Pendrick is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time Pendrick acquires them. Virtuoso uses the mails and telephone to collect consumer debts originally owed to others and currently held by Pendrick. Pendrick, directly or indirectly, is a debt collector under this arrangement. 15 U.S.C. § 1692a(6); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003).

10. The FDCPA treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. 15 U.S.C. § 1692a(6)(F)(iii); *Schlosser*, 323 F.3d at 536, citing *Bailey v. Sec. Nat'l Serving Corp.*, 154 F.3d 384, 387 (7th Cir. 1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1998); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

11. A company meeting the definition of a "debt collector" under the FDCPA (here, Pendrick) is vicariously liable for the actions of a second company collecting debts on its behalf as a matter of law. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir.

2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

12. Pendrick, directly or indirectly, is a debt collector under the above arrangement and is jointly responsible for Virtuoso's and NCC's actions. 15 U.S.C. § 1692a(6); *Janetos*, 825 F.3d at 325-26.

## FACTS

### *Nationwide Credit Corporation Letter*

13. Plaintiff Kimberly Morgan entered into a consumer transaction with Infinity Healthcare Phys, S.C. ("IHP") for personal medical services. The alleged debt was thus incurred for personal, family or household purposes.

14. Prior to April 10, 2015, Plaintiff's account with IHP went into default.

15. Prior to April 10, 2015, and after Plaintiff's account with IHP was in default, IHP sold or otherwise assigned the ownership rights to Plaintiff's account to Pendrick.

16. On or about April 10, 2015 a debt collector, Nationwide Credit Corporation ("NCC"), mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to Pendrick and originally owed to Infinity Healthcare Phys, S.C. ("IHP"). A copy of this letter is attached to this complaint as Exhibit A.

17. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

18. Upon information and belief, Exhibit A is a form debt collection letter used by NCC to attempt to collect alleged debts.

19. Upon information and belief, Exhibit A is the first written communication that NCC sent to Plaintiff regarding the alleged debt to which Exhibit A refers.

20. Exhibit A contains the following text:

3

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you contact this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

21. The above language in Exhibit A is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

22. Exhibit A also contains the following statement:

> If this account is not resolved within 45 days, we will report the account to Equifax, Experian, and Trans Union credit reporting agencies.

### *Virtuoso Letter*

23. On or about November 3, 2015, Virtuoso mailed a debt collection letter to Plaintiff regarding the same alleged debt referenced in Exhibit A, allegedly owed to Pendrick and originally owed to Infinity Healthcare Phys, S.C. ("IHP"). A copy of this letter is attached to this complaint as Exhibit B.

24. Both Exhibits A and B sought to collect the same account and the same amount - $337.00.

25. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

26. Upon information and belief, Exhibit B is a form debt collection letter used by Virtuoso to attempt to collect alleged debts.

27. Upon information and belief, Exhibit B is the first written communication that Virtuoso sent to Plaintiff regarding the alleged debt to which Exhibit B refers.

28. Exhibit B contains the following text:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

29. The above language in Exhibit B is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

30. Exhibit B also contains the following statement:

> Your Infinity Healthcare Phys, SC. account has been purchased by PENDRICK CAPITAL PARTNERS. All inquiries regarding this account should be made to Virtuoso Sourcing Group. If in 40 days following receipt of this notice and the expiration of the validation period below, the account remains unresolved it will be reported to the three national credit reporting agencies.

31. Plaintiff, thus, has forty days from receipt of Exhibit B to pay the allegedly overdue account or face being reported to the "three national credit reporting agencies." (Exhibit B).

## *FDCPA Violations*

32. Exhibit B is confusing to the unsophisticated consumer because it demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and payment "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

33. The unsophisticated consumer would have no idea how to both seek verification of the debt and avoid being reported to the three national credit bureaus in Exhibit B.

34. Nothing in Exhibit B explains to the unsophisticated consumer whether submitting a written dispute to Virtuoso would prevent reporting, or that Virtuoso would have to report the alleged debt as disputed.

5

35. It is likely that the forty day deadline to pay to avoid being reported would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether the debt is legitimate and actually theirs before paying Virtuoso/NCC.

36. The effect of the credit bureau reporting threat is to discourage or prevent consumers from exercising their validation rights.

37. The Seventh Circuit has established "safe harbor" language regarding apparent conflicts between validation rights and demands for payment in collection letters. *Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

38. Virtuoso did not use the safe harbor language in Exhibit B, or any equivalent or similar language.

39. Further, both NCC's and Virtuoso's letters threatened to report Plaintiff's alleged debt to credit bureaus. Exhibits A, B.

40. The unsophisticated consumer would be confused about how Pendrick and Virtuoso could report the same account to consumer reporting agencies twice. Even the unsophisticated consumer knows that a reported collection account is a negative item in the consumer's credit file.

41. Pendrick, who purchased the Plaintiff's and class members' alleged debts after those debts were in default, is vicariously liable for Virtuoso's actions in collecting debts on its behalf as a matter of law. *Janetos*, 825 F.3d at 325 ("we think it is fair and consistent with the Act to require a debt collector who is independently obliged to comply with the Act to monitor the actions of those it enlists to collect debts on its behalf.").

42. 15 U.S.C. § 1692g(b) states, in part:

> (b) **Disputed debts**
> …
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

43. 15 U.S.C. § 1692e provides, in relevant part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

44. 15 U.S.C. § 1692e(10) prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

45. Plaintiff was confused by Exhibit B.

46. The unsophisticated consumer would be confused by Exhibit B.

47. Plaintiff had to spend time and money investigating Exhibit B.

48. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit B.

49. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*,

No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

50. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

## COUNT I – FDCPA

51. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

52. The statement on Exhibit B that Plaintiff can avoid being reported to the three national credit bureaus only in Plaintiff pays within forty days conflicts with and overshadows the debt validation notice, in that it demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

53. Exhibit B is confusing, deceptive, and/or misleading to the unsophisticated consumer.

54. Defendants violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692g.

## COUNT II -- FDCPA

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. The statement on Exhibit B that Plaintiff can avoid being reported to the three national credit bureaus only in Plaintiff pays within forty days is confusing to the unsophisticated consumer.

57. Pendrick, through its former collector NCC, had already informed Plaintiff that her account would be reported to consumer reporting agencies.

58. Virtuoso's letter tells the consumer that the same account will be reported twice to the same consumer reporting agencies. The unsophisticated consumer would be confused as to how the same account could be reported twice, and would believe that such reporting would harm her credit.

59. Defendants violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692g.

## CLASS ALLEGATIONS

60. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, (c) between November 1, 2015 and November 1, 2016, inclusive, (d) seeking to collect a debt allegedly owed to Pendrick Capital Partners, LLC (e) which debt was incurred for personal, family or household purposes, and (f) who were also sent a collection letter in the form represented by Exhibit A to the complaint in this action, and (g) neither letter was returned by the postal service.

61. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

62. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with 15 U.S.C. § 1692e, 1692e(10), and 1692g.

63. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

64. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

65. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

66. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: November 1, 2016

**ADEMI & O'REILLY, LLP**

By: /S/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com